## No. 6988.

SUCCESSION OF E. H. LEPPELMAN. ON OPPOSITION OF THE WIDOW.

The question of the widow's right to the marital fourth may be raised and passed on in her opposition to the executor's account, when there are no heirs here, or claiming an interest, and when the universal legatee is present, and the account of the executor exhibits the proposed settlement of the succession.

Before a widow can rightfully claim the marital fourth from the succession of her husband she must show that her husband was rich, and left her in necessitous circumstances. If she fails to prove *either* of those essential facts her claim to the marital fourth will be rejected.

APPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Brame*, judge *ad hoc.*

*Kernan & Lyons* for executor and appellee.

*Wedge & Moore* and *Thos. J. Semmes* for opponent and appellant.

The opinion of the court was delivered by

MANNING, C. J. The executor of E. H. Leppelman filed the final account of his gestion, the homologation of which is opposed by the widow of the deceased on various grounds. The sole question for determination is the opponent's claim to the marital fourth.

The executor objects to the consideration of this question upon the pleadings now before us, for the reason that an opposition to an account is not the proper form for its legal presentation, and that the widow must be remitted to her action against the heirs. That is true as a gen-

eral proposition. Harrell's case, 17 La. 374. Vasser v. Dupre, 8 Annual 488. But it will be presently seen that under the facts of this case the reason of that rule ceases, since there are no children, nor other heirs here or claiming any interest, and the universal legatee is present, is a witness on the trial, and the account filed by the executor exhibits the liquidation, or proposed settlement of the succession, so that we should be merely driving the widow to new costs if we should sustain the objection of the executor, and without any substantial good to be obtained by any party.

Leppelman removed to this State from Ohio in 1869, where he had married three years before. He owned property there, and it is proved that his purchases here were made with funds derived from his separate estate there, so that the community is largely indebted to his separate estate, and is absorbed by that debt. The wife brought nothing into the marriage. Her father lives in Ohio, and is rich, his property in that State being worth two hundred thousand dollars or more, besides owning property in this State worth about fifty thousand dollars. Mrs. Leppelman, as heir of her deceased mother, owns one third of her property in Ohio, which is however burthened by the life estate of her father. The husband, who is a father, is by the common law tenant by the curtesy of his deceased wife's lands. Her father is near seventy years old, and her interest in her mother's Ohio land, affected by the life estate of her father, is estimated by some witnesses as worth four thousand dollars, by others, eight hundred dollars. She said she would take from her father two thousand dollars for it.

Mr. Leppelman, died in Dec. 1875 after an illness of several months. During the earlier part of that illness his wife lived under his roof, and seems to have taxed her ingenuity to increase his misery by adding mental distress to his bodily ailments. He feared she would poison him. Her outbursts of temper appear to have impressed him with the belief that she was insane, and in August before his death, he instituted a suit for her interdiction, which however was not pursued. It is not surprising that in his feeble condition he should have mistaken for insanity what a less enfeebled man would have understood was only the exacerbation of a malignant temper that had become uncontrollable because habitually uncontrolled. As a foil to his suit for her interdiction, she instituted a suit against him for divorce. Death drew a curtain over this disgraceful spectacle, but the warfare was renewed over his grave by her claim for the marital portion from his estate. It will be for us to close the melancholy drama by a decree that shall silence the only remaining contestant.

Art. 2359 of the Civil Code gives the right to a surviving spouse to take out of the succession of the deceased one fourth of the succession

in full property, when as in this case there are no children and the wife brought no dowry, provided the decedent died rich and the survivor is left in necessitous circumstances.   new no. 2382.   In Gee v. Thompson, XI Annual 657 it was held that a decree of separation from bed and board does not preclude the surviving wife from claiming the marital fourth, and where the husband was worth thirty-one thousand dollars and the wife had but little over one thousand; the former was held to have died rich, and the latter to be in necessitous circumstances.   And on the other hand, it was held in Armstrong v. Steeber, 3 Annual 713, that a wife who had abandoned her husband to live in concubinage with another can not be said to have been left by his demise in necessitous circumstances, within the reason and spirit of the law.

The wife in this case, as in Gee and Thompson, was legally in a position to fulfill the requirement as to her status, and although there is testimony in the record of her immodest deportment, it does not at all place her in the position of the wife in the Armstrong case.   The inquiry is, did Leppelman die rich, and is she necessitous.

The community property was inventoried in Nov. 1875 in her suit for divorce at $5640, and in the succession proceedings shortly thereafter, the husband's estate including the community is inventoried at $11,-050.   The community is indebted to the separate estate of the husband for over $12,000, a sum exceeding its value.   After the sale of the movables and the payment of the debts, there remains twelve hundred and seven dollars in the executor's hands.   The land is not sold, but was inventoried at $5250.   The husband died worth less than eight thousand dollars, even if the land brings considerably more than its appraised value.   The widow's separate estate, i. e. her interest in her mother's succession, is worth $2400 if we take the mean value between the opposing estimates of witnesses—she would sell it to her father for $2,000.   The deceased left his property to Alice Farley, the niece of his first wife, who had lived with him in Ohio, and also here, and who superintended his household and nursed him.   The executor proposed to deliver to Miss Farley the residuum of the estate, and refused to recognise the widow's claim to the marital portion, and the court sustained him.

The marital portion had its origin with Justinian, and is found also in the Partidas.   Gregorio Lopez, commenting on the latter, puts a question pertinent to our present inquiry—what if a wife should have a rich father, from whom she could demand alimony, could she sue for the marital fourth ?   He cites two preceding commentators as holding the negative, because a daughter who has a rich father can not be called poor, and because the daughter may compel her father to support her, and thus her wants may be supplied, which is more just than that she

should receive assistance from the fortune of her deceased spouse. tom. 111, p. 218.

So Merlin asks—La femme qui a été mariée sans dot, mais qui a un père riche, peut-elle demander la Quarte comme pauvre? Lebrun répond que non—la loi (dit-il) n'entend pas parler d'une femme qui ait un père riche, car si le père qui n'a pas doté, etait opulent, la plupart des docteurs estiment que, comme il est obligé de doter et de nourrir sa fille, le cas de la Quarte cesse. Repertoire, *verbo*, Quarte de conjointe pauvre.

The interest of Mrs. Leppelman in her mother's estate is worth one fourth as much as the estate of her husband, and her father's property in this State alone is worth more than six times the latter. Rich is a relative term. Property which would make a person in one condition of life rich, would be inadequate to supply the wants, albeit they are artificial, of one in another condition of life. A woman whose father is worth a quarter of a million with only three heirs, can not be said to have had a rich husband, if he is only worth eight thousand dollars. Leppelman did not die rich; nor is his wife left by his death in necessitous circumstances, and both conditions must be fulfilled before a surviving spouse can legally claim the marital portion.

Judgment affirmed.